### HAYDEN BROS. v. COLUMBIA MEDALLION STUDIOS, Inc.
### No. 9587.

Circuit Court of Appeals, Eighth Circuit.
March 22, 1933.

Gerald M. Vasak, of Omaha, Neb. (William A. Schall and Frank E. Sheehan, both of Omaha, Neb., on the brief), for appellant.

Paul L. Martin, of Omaha, Neb. (Arthur R. Wells, Winthrop B. Lane, and Casper Y. Offutt, all of Omaha, Neb., on the brief), for appellee.

Before STONE, VAN VALKEN-BURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment after verdict, directed in part, against Hayden Bros., a corporation, defendant below.

The action was brought by the Columbia Medallion Studios, Inc., seeking a money judgment, and was based upon a written contract between the parties dated on or about March 20, 1929. This contract provided for the establishing by the plaintiff in the store of the defendant of a department planned to promote the sale of medallions, copied from photographs, and picture frames. The medallions were to cost the defendant 75 cents each. This entire cost was to go to the plaintiff. The plaintiff was also to furnish defendant, at one-half the retail prices, frames for the medallions which would be sold by the defendant to the customers, and the defendant would make its profits, if any, from the sale of these frames.

The defendant ordered, and the plaintiff delivered, frames and medallions in the sum of $3,287.13, and had partly completed medallions of the value of $683. At the time of bringing the action, no payment had been made by the defendant.

The contract further provided that either party might terminate the contract by giving sixty days' notice. In that event, the closing date was to be featured in the local newspapers by the defendant.

In addition to the above sums, plaintiff claimed damages for lost anticipated profits in the sum of $5,303.24, by reason of failure of the defendant to give the proper notice and to make the proper advertisements relative to the closing date, upon termination of the contract by defendant.

The answer admitted the execution of the contract and nonpayment, but set up as a counterclaim that the defendant was induced to enter into the contract by means of false and fraudulent representations by plaintiff as follows:

"(a) Said plaintiff falsely and fraudulently represented to said defendant that J. L. Brandeis & Sons of the City of Omaha, Nebraska, had entered into a contract with said plaintiff similar to the contract involved in this action, and that by reason of the same the sales in the Brandeis stores had been increased many thousands of dollars, and that the said J. L. Brandeis & Sons had made, as a profit on said picture business, many thousands of dollars:

"(b) Said plaintiff falsely and fraudulently represented to said defendant that in every department store throughout the United States where the plaintiff had put into operation its plan of business pursuant to the contract upon which this action is based, the sales of said department store had increased many thousands of dollars, and that each of said department stores had made considerable money by virtue of said contract."

The case was tried by the court and jury, and a verdict was returned by direction of the court in favor of the plaintiff for merchandise delivered in the sum of $4,077.75, and also in favor of the plaintiff on the counterclaim of the defendant.

The question of damages for anticipated

profits was submitted to the jury, and it found for the plaintiff in the sum of $290.83.

The main contentions of appellant are: (1) That the court erred in instructing the jury to return a verdict against defendant on its counterclaim; (2) that the court erred in excluding the testimony offered by defendant of Noland Blass.

As to the first, the basis of the instruction, as stated by the court, was that there was a variance between the allegations of the complaint and the proof; that the allegations were that the Brandeis Store in Omaha had made profits out of a similar contract between it and the plaintiff; that the proof simply tended to show that there was no profit made by the Brandeis Company in the particular department dealing with the medallions and the picture frames; but that there was no showing that the general profits of the store were not increased.

We think that the action of the court in directing a verdict on the counterclaim was right, but that the reason given was erroneous.

The defendant had demanded, under its counterclaim, damages on the following grounds: (1) That, because of the false representations, defendant had paid (contracted to pay) more for the merchandise by $1,500 than it had received for the sale thereof. (2) That defendant had suffered damage in the sum of $5,000 because plaintiff had contracted to return the photographs with corresponding medallions within thirty days, but had failed to do so, causing the customers to become dissatisfied and leave. (3) That defendant had allotted for the business a space in its store of a rental value of $500 per month, and had been damaged in this respect by reason of the false representations in the sum of $3,000.

The false representations relied upon by the defendant are set forth above. The one relating to the Brandeis Store may be subdivided into two: (a) That a similar contract had been entered into by plaintiff with the Brandeis Store, and that the general sales of the Brandeis Store had thereby been greatly increased. (b) That the Brandeis Store had made a profit on the department devoted to this medallion business.

The trial court took the view that the representation as to the Brandeis Store related solely to increase of general sales at the store. In this we think the court was in error, and we shall assume that the representation covered both matters.

The counterclaim was in effect an action for deceit, and, in an action for deceit, numerous elements must be proven: (1) The representations, material in character. (2) The falsity thereof. (3) Knowledge of the falsity on the part of the maker or its equivalent. (4) Reliance on the representations by the defrauded party. (5) Damages suffered by the defrauded party by reason of the false representations.

In the case at bar, we have simply the proof offered by the defendant. No evidence was introduced on the part of the plaintiff touching the counterclaim, for the reason that the counterclaim was stricken out by the court before the plaintiff finally rested. There is substantial evidence that the representations alleged were made, and, as stated above, we think that these related to both matters in connection with the Brandeis Store.

Turning to the second item of proof, namely, the falsity of the representations, we find that the testimony was given by two witnesses; one was Harry B. Zimman. He testified that he was secretary and treasurer of the Brandeis Store; that he had been in that business for approximately ten years; that he had made a search for the records of the business done by the Brandeis Store with the Columbia Medallion Studios, Inc., and was unable to locate them; that he had no record of those transactions.

The other witness was Ella Quinn. She testified that she had once been employed in the Brandeis Store but had quit the employment in 1918, approximately eleven years before any contract between plaintiff and defendant was entered into, and about six years before plaintiff began carrying on the medallion business. Miss Quinn's testimony, of course, was confined to the period prior to 1918. She testified, under objection, that in the Brandeis Store the cost of the medallions and frames was much greater than the amount of money received in return for them.

In our opinion, this testimony, standing alone, was incompetent and irrelevant, and in any event was not substantial proof on the issue of falsity made by the pleadings. That issue was whether, during the period of contractual relation between plaintiff and the Brandeis Store, the latter had, by reason of the contract, made a profit in the medallion department of the store. Plainly, before this could be determined, it was necessary to know when the contract began and when it ended.

At the time testified to by Miss Quinn, the plaintiff company was not in business, and

the contract under which the Brandeis Company was operating was one made with the predecessor of the plaintiff. Whether a new contract was made between plaintiff and the Brandeis Store, or the old contract adopted, does not appear; nor do the terms of the new contract, if one was made, appear; nor does it appear when the contractual relation between plaintiff and the Brandeis Store came to an end; nor does it appear whether or not profit was made in the medallion department of the Brandeis Store during the period when the Brandeis Store had contractual relation with the plaintiff. For aught that appears, that department may have been very profitable during that period. Even if it were allowable to consider the period testified to by Miss Quinn, there is no showing that during the whole period, both that covered by Miss Quinn and the period after plaintiff had contract relation with the Brandeis Store, there was not considerable profit in the medallion department.

■ The burden of proof on the issue of falsity was on the defendant, and it did not and could not sustain this burden by introducing testimony covering a particular period many years before any contractual relation existed between the plaintiff and defendant.

We are therefore of the opinion that there was no substantial evidence of a competent and material nature tending to show falsity in respect to the representation in question.

■ The other representation relates to department stores throughout the country; and the proof offered by the defendant in respect to this representation consisted of the deposition of one Blass who was connected with a department store operated by the Gus Blass Company at Little Rock, Ark. This store, for a short period, had a medallion department which was unprofitable, but the period was prior to the time when the plaintiff took over from its predecessor Lederer the medallion business. The plaintiff, Columbia Medallion Studios, Inc., began business sometime in the year 1924. At that time it purchased the medallion business from Mr. Lederer. The witness Blass, testifying by deposition, said that the transactions he had in mind took place "between six and eight years ago." The deposition presumably was taken after the commencement of the present suit, which was March 25, 1930, and transactions six or eight years prior to that time certainly would be transactions prior to the time when the plaintiff began business. Furthermore, the witness Blass testified directly that, at the time the contract of his company was made, Mr. Israel Lederer was head of the Columbia Medallion Studios, and that the dealings were had with the company conducting the business before 1925, thus showing conclusively that the contract referred to by Mr. Blass in his deposition was not one made with the plaintiff. This deposition, therefore, did not prove or tend to prove the falsity of the representation that department stores "where the plaintiff had put into operation its plan of business pursuant to the contract upon which this action is based, the sales of said department store had increased many thousands of dollars." The deposition was properly stricken out by the court.

■ Without pursuing the subject further, we think that there is an utter lack of substantial proof of the falsity of the alleged representations.

The remaining item of the defendant's counterclaim is based upon its allegation that the plaintiff company had agreed to return the photographs furnished and the medallions within thirty days' time, and that its failure to do this caused the defendant's customers to become dissatisfied and leave.

■ We find in the record no evidence to support such an allegation, and certainly there is nothing in the contract to support it. The only delay mentioned in the record that we have found is one which occurred after the defendant had refused to pay for the goods which had been shipped to it, and received by it; and the plaintiff then apparently held back certain orders to induce the defendant to pay for what it had received. Certainly this constituted no breach of contract which could be a foundation for a counterclaim on the part of the defendant.

In view of the foregoing, it seems clear that a verdict was rightly directed in favor of the plaintiff upon the whole counterclaim of defendant.

Our conclusion is that the judgment should be affirmed. It is so ordered.