UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Michael Giles

v.

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

Case No. 17-cv-659-PB
Opinion No. 2018 DNH 202

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Michael Giles moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner of the Social Security Administration ("SSA").

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

1

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 8, is part of the court's record and will be summarized here, not repeated in full.

When Giles applied for DIB, he was 56 years old. He had last worked in November of 2012, when he was laid off from his job as a buyer. He claims he became disabled in April of 2013 as a result off: (1) degenerative arthritis in his neck and back; and (2) emphysema.

In April of 2015, Dr. Louis Rosenthall, a non-examining state-agency consultant, reviewed Giles's medical records and assessed his physical residual functional capacity ("RFC").[1] In terms of exertional capacity, Dr. Rosenthall opined that Giles

---

[1] "An applicant's residual functional capacity 'is the most [he or she] can still do despite [his or her] limitations.'" Purdy v. Berryhill, 887 F.3d 7, 10 n.2 (1st Cir. 2018) (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for supplemental security income that is worded identically to 20 C.F.R. § 404.1545(a), which governs claims for DIB) (brackets in the original).

could: (1) lift and/or carry 10 pounds frequently and 20 pounds occasionally; (2) stand and/or walk, with normal breaks, for a total of about six hours in an eight-hour work day; (3) sit, with normal breaks, for about six hours in an eight-hour work day; and (4) push and/or pull the same amount he could lift and/or carry.  In terms of postural limitations, Dr. Rosenthall opined that Giles could frequently balance, stoop, kneel, crouch, and crawl, but could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  Finally, Dr. Rosenthall opined that Giles had no manipulative, visual, communicative, or environmental limitations.

In July of 2016, a treating physiatrist, Dr. Bruce Myers, completed a Physical Impairment Medical Source Statement on Giles.  In terms of exertional capacity, Dr. Rosenthall opined that Giles could: (1) walk one city block without rest or severe pain; (2) sit for 30 minutes at a time before needing to get up; (3) stand for 15 to 20 minutes at a time before needing to sit down or walk around; (3) stand/walk for less than two hours in an eight-hour work day; and (4) sit for about four hours in an eight-hour work day.  In addition, Dr. Myers opined that Giles needed to: (1) walk around for 10 minutes every 30 minutes; (2) change change positions at will from sitting, standing, or walking; (3) take unscheduled breaks of five to ten minutes each, three times a day; and (4) use a cane occasionally, but

3

not typically.  Finally, Dr. Myers opined that: (1) for one to two thirds of a typical work day, Giles's "experience of pain or other symptoms [would be] severe enough to interfere with attention and concentration needed to perform even simple work tasks," Administrative Transcript (hereinafter "Tr.") 438 (emphasis omitted); and (2) as a result of his impairments or treatment for them, Giles would likely be absent from work more than four days per month.

After the SSA denied Giles's application, he received a hearing before an Administrative Law Judge ("ALJ").  At the hearing, the ALJ took testimony from a vocational expert ("VE"). The VE testified that: (1) a person with the RFC recited in Dr. Rosenthall's opinion would be able to do Giles's past work plus three other jobs; and (2) a person with exertional and postural limitations that were similar, but not identical, to those in Dr. Myers's opinion would not be able to do Giles's past work, but could do three other jobs.[2]  The ALJ then asked the VE about

---

[2] I suspect that the ALJ intended for his second hypothetical question to include the limitations that Dr. Myers indicted in his opinion, but: (1) Dr. Myers opined that Giles could stand/walk less than two hours total in an eight-hour work day, see Tr. 439 (emphasis added), while the ALJ's second hypothetical question posited a person who "can stand and walk two hours per day," Tr. 92 (emphasis added); and (2) Dr. Myers opined that Giles could sit for about four hours total in an eight-hour work day, see Tr. 439 (emphasis added), while the ALJ's second hypothetical posited a person "who can . . . sit for six [hours per day]," Tr. 92 (emphasis added).

ordinary tolerances for absenteeism, and the VE testified that the ordinary tolerance was eight hours per month. In addition, in response to a question from Giles's counsel, the VE testified that none of the jobs he had previously identified could be performed by a person who was off task up to one third of an eight-hour work day because of pain or other symptoms.

After the hearing, the ALJ issued a decision in which she found that Giles had an RFC that was largely consistent with the RFC in the opinion provided by Dr. Rosenthall and that allowed Giles to perform his past work as a materials manager, as a purchasing manager, and as a buyer, as well as three other jobs. In the section of her decision in which she explained how she determined Giles's RFC, the ALJ stated that she gave great weight to Dr. Rosenthall's opinion and little weight to Dr. Myers's opinion.

Based upon her finding that Giles had the RFC to perform his past work, the ALJ determined that he was not disabled. In the alternative, she also determined that Giles had the RFC to perform three other jobs, i.e., order clerk, telephone operator, and expediter.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached

5

retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. § 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that Giles was not under a disability from April 10, 2013, through November 2, 2016, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step sequential evaluation process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Purdy v. Berryhill, 887 F.3d 7, 10 (1st Cir. 2018) (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and

6

the burden of proof.  See Purdy, 887 F.3d at 9 (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must prove he is disabled by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[3]  Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Giles's Claims

Giles claims that the ALJ erred by giving little weight to Dr. Myers's opinions, erred by giving great weight to Dr. Rosenthall's opinions, and erred in evaluating the testimony he gave concerning his symptoms and limitations.  Giles's first argument is persuasive, and dispositive.

---

[3] At step five, the burden of proof shifts to the Acting Commissioner, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the Acting Commissioner's step-five determination is not at issue here, so there is no need to describe the mechanics of step five.

Giles filed his application for DIB in October of 2014. Under the SSA regulations governing applications filed before March 27, 2017, the opinion of a treating medical source such as Dr. Myers is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).[4]  But, no matter how much weight an ALJ gives the medical opinion of a treating source, she is obligated to "give good reasons in [her] decision for the weight [she] give[s] [that] opinion."  Id.  Moreover:

> Giving "good reasons" means providing "specific reasons" that will allow "subsequent reviewers [to know] . . . the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2P, 1996 WL 374188, at *5 (1996).  Accordingly, where no such "specific reasons" are given, remand is appropriate if the failure renders meaningful review impossible. See Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000).  In Lord, the ALJ "did not address" the treating physician's "evaluation of [the claimant's] . . . functional limitations."  Id.  On that record, the court could not "determine whether [the ALJ] . . . properly weighed that evidence in light of the applicable factors listed in the SSA regulations."  Id.  Finding it "impossible to determine whether . . . [the medical opinion] evidence was considered and implicitly discredited or instead was simply overlooked," the court remanded for further proceedings.  Id. at 15.

---

[4] Under the regulations that apply to applications filed after March 27, 2017, the SSA does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).

8

See also Smith v. Barnhart, Case No. Civ. 02−081−M, 2003 WL 1191401, at *7 (D.N.H. March 12, 2003) (remanding for further consideration where "the ALJ did not account for several of the limitations from which [claimant's treating physician] . . . believes claimant suffers and failed to adequately explain the basis for his (implicit) decision not to give controlling weight to those medical opinions").

Kenerson v. Astrue, No. 10-CV-161-SM, 2011 WL 1981609, at *4 (D.N.H. May 20, 2011) (footnote omitted). Substantively, a "good reason" is one that "embod[ies] 'a "rationale that could be accepted by a reasonable mind,'" Sanford v. Berryhill, No. 17-cv-246-JL, 2018 4350251, at *7 (D.N.H. Sept. 12, 2018) (quoting Stafford v. Berryhill, No. 17-cv-345-LM, 2018 WL 3029052, at *8 (D.N.H. June 18, 2018)).

Here, Dr. Myers provided two opinions that, if given controlling weight, would compel a determination that Giles was unable to work and, as a consequence, disabled. The first of those opinions was that Giles would be distracted by pain or other symptoms between one third and two thirds of a work day. The ALJ gave a reason for discounting that opinion, explaining that it was inconsistent with Dr. Myers's finding that Giles could tolerate moderate work stress. See Tr. 27. The second opinion that, if accepted, would dictate a finding that Giles could not work was Dr. Myers's opinion that Giles would be absent from work more than four days per month. With respect to that opinion, the ALJ had this to say:

> Although Dr. Myers opined the claimant would miss more than four days of work per a week [sic], Accordingly, I find that the totality of the Seacoast Physiatry medical record, as well as other medical records, is inconsistent with Dr. Myers's opinion of the claimant's maximal functional abilities and must give it little weight.

Tr. 27. In the sentences leading up to the sentence and a half quoted above, the ALJ gave specific reasons for discounting specific opinions on Giles's capacities for attention and concentration, sitting, and walking. But, obviously, the second half of the sentence in which the ALJ attempted to explain her reason for discounting Dr. Myers's opinion on absenteeism fell through the cracks. Consequently, she gave no reason at all for discounting that opinion, much less a good reason. See McCormick v. Berryhill, No. 16-cv-321-LM, 2017 WL 4220449, at *7 (D.N.H. Sept. 22, 2017) ("by giving no reasons at all [for discounting a treating source's opinion], he [the ALJ] necessarily fell short of meeting the 'good reasons' requirement").

Giles identifies the ALJ's failure to address Dr. Myers's opinion on absenteeism as one of several errors the ALJ made when weighing Dr. Myers's opinions.[5] In response, the Acting

---

[5] Giles also claims that: (1) the ALJ did not explain how an ability to tolerate moderate work stress was inconsistent with Dr. Myers's opinion that Giles's pain or other symptoms would frequently interfere with his attention and concentration; and (2) several of the ALJ's factual findings were not supported by substantial evidence.

10

Commissioner cites Bailey v. Berryhill, No. 2:17-cv-00080-DBH, 2017 WL 6590546, at *7 (D. Me. Dec. 26, 2017), for the proposition that the ALJ was not obligated to "mention each limitation in Dr. Myers' opinions," Resp't's Mem. of Law (doc. no. 8-1) 4.  In Bailey, there were opinions from several treating sources, and the court ruled that the ALJ did not need to "detail the limitations assessed by each physician," id.  But it does not appear that any of the limitations at issue in Bailey was, like Dr. Myers's absenteeism limitation in this case, a single limitation that precluded all employment.  Thus, Bailey is not especially persuasive.

Moreover, judges in this district have routinely remanded when an ALJ has failed to address a disabling limitation in a treating source's opinion such as the absenteeism limitation in this case.  See, e.g., McCormick, 2017 WL 4220449, at *6 (remanding where ALJ failed to mention treating source's "limitations on sitting, standing, and walking that, according to the VE, would preclude any work"); Hunt v. Colvin, No. 16-cv-159-LM, 2016 WL 7048698, at *8 (D.N.H. Dec. 5, 2016) ("[I]t is not . . . clear that the ALJ actually addressed Dr. Nelson's opinion that claimant would be absent from work four or more days per month.  Given the ALJ's obligation to evaluate all medical opinions, and the VE's testimony that absence from work for more than three days per month would preclude any

11

employment, the ALJ's apparent failure to address Dr. Nelson's opinion on that matter is a problem.") (citations omitted); Willey v. Colvin, No. 15-cv-368-JL, 2016 WL 1756628, at *5 (D.N.H. Apr. 7, 2016) (recommending remand where ALJ failed to mention treating source's "opinion that [claimant] needed to lie down every two hours" which VE "identified . . . as precluding [claimant] from performing any job"), R. & R. adopted by 2016 WL 1733444 (Apr. 29, 2016); see also Lavoie v. Colvin, No. 14-cv-466-PB, 2015 WL 9462085, at *3-4 (D.N.H. Dec. 28, 2015) (remanding where treating source "expressed a number of opinions regarding [claimant's] exertional and nonexertional limitations" but ALJ "did not specifically address these various conclusions . . . or otherwise explain why these findings were unsupported by the record"); Jenness v. Colvin, No. 15-cv-005-LM, 2015 WL 9688392, at *7 (D.N.H. Aug. 27, 2015) (same).[6]

To be sure, the ALJ's failure to complete the sentence in which she attempted to explain her decision to discount Dr. Myers's absenteeism opinion was most likely a clerical error. And there may be good reasons to discount that opinion. But, "it is well established that 'the court cannot affirm the ALJ's

---

[6] It is perhaps worth noting that under the regulations that apply to applications filed after March 27, 2017, the SSA is "not required to articulate how [it] consider[s] each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

decision based upon rationales left unarticulated by the ALJ,'" Crandlemere v. Berryhill, No. 15-cv-516-JL, 2017 WL 4083566, at *9 (D.N.H. Sept. 15, 2017) (quoting Jenness, 2015 WL 9688392, at *7; citing High v. Astrue, No. 10-cv-69-JD, 2011 WL 941572, at *6 (D.N.H. Mar. 17, 2011)), and Giles is entitled to good reasons for the ALJ's decision to discount Dr. Myers's opinion. Accordingly, mere oversight or not, the ALJ's failure to address Dr. Myers's absenteeism opinion, which precludes all work, requires a remand.

Because the court is remanding for a proper evaluation of Dr. Myers's absenteeism opinion, there is no need to address the rest of Giles's claims. However, there is a plausible argument to be made that the ALJ crossed the line separating good reasons from those that do not meet that standard when she found that Dr. Myers's opinion on Giles's pain-related limitation on attention and concentration was inconsistent with his opinion that Giles could tolerate moderate "work stress." That argument is plausible because the court has difficulty seeing a logical connection between a person's ability to tolerate the external stress of a workplace and his capacity to maintain concentration and focus when confronted with pain or other symptoms of a physical impairment. The SSA may wish to address this issue on remand.

13

## IV. Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 8, is denied, and Giles's motion to reverse that decision, document no. 7, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings consistent with this order, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

/s/ Paul Barbadoro_____
Paul Barbadoro
United States District Judge

October 9, 2018

cc:  D. Lance Tillinghast, Esq.
     Robert J. Rabuck, Esq.

14