Carreau v. SSA                    CV-98-274-M    09/30/99
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW HAMPSHIRE


Dennis Carreau,
        Claimant

        v.                                      Civil No. 98-274-M

Kenneth S. Apfel, Commissioner,
Social Security Administration,
        Defendant.


                          O R D E R


        Claimant Dennis Carreau moves pursuant to 42 U.S.C.

§ 405(g) to reverse the Commissioner's decision denying his

applications for Social Security Disability Insurance benefits

under Title II of the Social Security Act (the "Act"), 42 U.S.C.

§ 423.  The Commissioner moves for an order affirming the

Commissioner's decision.  For the reasons that follow, the

decision of the Commissioner is reversed and the case is

remanded.


                      Standard of Review

I.    Properly Supported Findings by the Administrative
      Law Judge ("ALJ") are Entitled to Deference.

        Pursuant to 42 U.S.C. § 405(g), the court is empowered "to

enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the

Secretary [now, the "Commissioner"], with or without remanding

the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's position. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)

---

[1]Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

2

(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

## II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir.

3

1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant.  See Hernandez

v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if his:

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Background[2]

---

[2]The background facts are taken from the parties' Joint Statement of Material Facts with some supplementation from the record.

Claimant was born on April 19, 1949, and was 48 years old at the time the ALJ issued his decision denying disability benefits. Claimant's formal education ended with completion of the eighth grade, but he earned his high school equivalency certificate while in the Navy. From 1970 to 1993, claimant worked as a commercial glazier. (See R. at 121.)[3] In May 1993, claimant injured his back at work. His injury kept him out of work for three or four weeks, after which he returned to work on light duty. Claimant completely stopped working on October 20, 1993, due to pain in his back and left knee.

Between October 5, 1993, and February 11, 1994, claimant consulted a number of physicians about his pain. Their findings are more fully detailed in the parties' Joint Statement of Material Facts; the following is a selective summary of some of those findings. A CT scan of claimant's lumbar spine taken on October 21, 1993, showed a left-sided far lateral herniated disc and possible central herniated disc, both small in size, at L3-4, and a mild central and right-sided herniated disc, also small, at L4-5. (See R. at 208.) A CT scan taken on January 3, 1994, indicated a far left lateral herniated disc at L3-4 and a moderate central and left herniated disc at L4-5. (See R. at

---

3Citations to the record are to the certified transcript of record filed by the Commissioner with the court.

6

182.) An MRI of claimant's left knee was also done in late January of 1994, and showed small joint effusion and possible anterior cruciate ligament injury, as well as a "small degenerative tear of the posterior horn of the medial meniscus." (R. at 210.)

Claimant underwent surgery on his left knee on February 11, 1994. No tear of the anterior cruciate ligament was found, but the tear in the medial meniscus was repaired. The surgeon, Dr. Charles K. Detwiler, found no other abnormalities.

Despite the surgery, the pain in claimant's left leg returned. After further consultation with a number of physicians, an arthroscopic discectomy was performed on claimant's L3-4 disc by Dr. Theodore R. Jacobs on June 26, 1995. The procedure went well and Dr. Jacobs was able to remove a good part of the herniated disc. Nevertheless, claimant continued to complain of back and knee pain, prompting Dr. Jacobs to note on August 30, 1995, that claimant "really has had no improvement from the procedure." (R. at 164.)

Dr. Jacobs scheduled further surgery to be performed in January, 1996. However, when a pre-operative MRI showed dramatic improvement in the operative site, Dr. Jacobs canceled the scheduled procedure. Dr. Jacobs noted that claimant's "symptoms have always been somewhat atypical," and that claimant now

7

presented with a new complaint of right hip pain. (R. at 167-68.) Dr. Jacobs recommended that claimant have a rheumatological evaluation. Dr. Jacobs repeated that recommendation on April 24, 1996, noting that claimant's pain "could very well be musculoskeletal rather than radicular." (R. at 170.) Dr. Jacobs also released claimant from his acute care on that date.

Claimant saw other practitioners after filing his application for disability benefits on May 1, 1996. On January 14, 1997, claimant consulted Dr. William J. Kilgus "primarily for an opinion regarding Social Security Disability." (R. at 221.) Dr. Kilgus examined claimant and concluded that "[b]ased on his age, training and background, and given the fact that it is unlikely that he will improve to any significant degree in the future, he is unable to engage in any substantial gainful employment on a permanent basis." (R. at 221.)

Claimant was also referred by a Disability Claims Adjudicator to Angel R. Martinez, Ph.D., a clinical psychologist, for a psychological evaluation and assessment of his mental ability to perform work-related activities. On May 29 and 30, 1997, Dr. Martinez conducted a clinical interview and administered intelligence, achievement, verbal learning, visual memory, and personality assessment tests. He noted, inter alia, that claimant possessed average to high average intellectual

8

ability, but scored only in the low average to average range on a full scale IQ test. Claimant's test results also showed him spelling at a third grade level, reading at a sixth grade level, and doing arithmetic at a seventh grade level. These results, compared with those on the intelligence test, led Dr. Martinez to suspect that claimant had a learning disability. Personality testing revealed "relatively mild or transient depressive symptomatology," and a high level or perceived stress. (R. at 241.)

Dr. Martinez concluded that claimant's ability to follow work rules, relate to co-workers, deal with the public, and maintain concentration was good. He also rated as good claimant's ability to understand, remember and carry out simple, detailed, or complex job instructions and his ability to make certain personal and social adjustments. Dr. Martinez rated as only fair, however, claimant's ability to use judgment, interact with a supervisor, deal with work stresses, and function independently.

Claimant filed the application for Social Security Disability Benefits now under consideration[4] on May 1, 1996, stating that he became unable to work because of a disabling

---

[4]Claimant had filed a previous application that the ALJ declined to reopen.

9

condition on October 20, 1993.  He alleged a disabling condition consisting of herniated discs in his lower back, two surgeries on his left knee, arthritic ligament damage to his right knee in 1966, surgery on his left shoulder, and a head injury in the early 1970s that causes headaches "off and on."  (R. at 117.) The parties agreed in their joint statement of material facts that while claimant had left knee and left shoulder surgeries years before his injury in May, 1993, "[r]esiduals from those surgeries did not prevent [him] from continuing to engage in heavy work."  (Joint Statement of Material Facts at 1 n.1.)

Claimant's application for disability benefits was denied on June 19, 1996, and on reconsideration.  Claimant timely requested a hearing and appeared before an ALJ on January 23, 1997.  The ALJ denied the application on August 22, 1997.  He determined that (1) claimant had not engaged in substantial gainful activity since October 20, 1993; (2) claimant had a severe impairment in the form of degenerative disc disease of the lumbar spine; (3) the impairment did not meet or equal a listed impairment; (4) claimant could not perform his past relevant work; and (5) claimant had the exertional capacity for light work and while additional exertional limitations limited him to less than the full range of light work, there are significant numbers of jobs

in the national economy that he could perform.  Thus, claimant's application was denied at step five of the sequential inquiry.

The ALJ concluded that claimant could not lift and carry more than 20 pounds occasionally and 10 pounds frequently, and that he could not repetitively stoop or bend, climb, or sit for prolonged periods.  The ALJ also determined that claimant's allegations of disabling pain were not completely credible. Thus, the ALJ found that "claimant can perform a limited range of light work that is not further limited by his pain symptoms." (R. at 36.)  The ALJ also found that claimant's mild learning disorder did not limit his capacity to perform unskilled work. Finally, the ALJ found that claimant was a younger individual with a limited education and no transferable work skills.

The ALJ noted that if claimant could engage in a full range of light work, Rule 202.18 of the medical-vocational guidelines contained in Appendix 2 to Subpart P of Part 404 of 20 C.F.R. (the "grid") would require a finding of not disabled.  He concluded, however, that claimant's limitations on bending, stooping, climbing and sitting did not "significantly impact the light exertional job base."[5]  (R. at 36.)  Therefore, using the

_____

[5]Although claimant devotes no more than two passing references, in footnotes, to the argument, he appears to challenge the ALJ's determination of the extent to which postural limitations affect his ability to perform light work.  Specifically, claimant argues that by concluding that he could not perform repetitive bending

11

or stooping, the ALJ implicitly found that he could perform such functions frequently, a finding that was inconsistent with the state agency doctor's determination that he could perform such functions only occasionally. Claimant's argument appears to miss the point. By finding that claimant could not bend or stoop repetitively, the ALJ implicitly determined that claimant's ability to bend and stoop ended somewhere beyond the frequency of "occasionally." The proper implication to be drawn is that the claimant can bend and stoop occasionally, which is consistent with the state agency doctor's finding and is the maximum bending capability required to perform substantially all light work. See SSR 85-15, 1985 WL 56857 at *7; Frustaglia, 829 F.2d at 195. The First Circuit held as much in Frustaglia, 829 F.2d at 195, where it noted:

> The ALJ found that the claimant could not do repeated bending, i.e., recurring again and again, which by definition is a more strenuous mode than occasional activity. It is fairly obvious that such a restriction would have very little effect on the ability to perform the full range of work at either the light or sedentary level.

Thus, the ALJ's determination that claimant could not perform a job that required repetitive bending and stooping did not preclude the ALJ from relying on the "light work" grid. See id.

The ALJ's findings that claimant could neither climb nor be required to sit for prolonged periods have somewhat less certain an effect on the unskilled light occupational base. The effect of a limitation on prolonged sitting would appear to small, as "[r]elatively few unskilled light jobs are performed in a seated position." SSR 83-10, 1983 WL 31251 at *5. Indeed, the primary effect would be to negate the presumption that a person capable of performing light work can also perform sedentary work: "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Similarly, the restriction on climbing is of dubious significance. It is noted in SSR 83-14 that "[r]elatively few jobs in the national economy require ascending or descending ladders and scaffolding." SSR 83-14, 1983 WL 31254 at *2. SSR 83-14 further indicates that an inability to climb ropes, poles and scaffolds would "have very little or no effect on the unskilled light occupational base." Id. at *5. The slightly more recent SSR 85-15 states that "[w]here a person has some

grid as a "framework for decisionmaking,"[6] (R. at 39), the ALJ found that claimant was not disabled.

On March 31, 1998, the Appeals Council denied claimant's request for review, rendering the ALJ's decision the final decision of the Commissioner. Claimant now appeals to this court.

## Discussion

Claimant argues that the ALJ's decision is erroneous because he failed to correctly evaluate claimant's subjective complaints

---

limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15, 1985 WL 56857 at *6. However, "[w]here the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a [vocational specialist] may be necessary." Id.

The court need not resolve, on this record, whether claimant's limitations on climbing and prolonged sitting have an insignificant effect on his remaining occupational base. As the court remands this case for the presentation of evidence regarding claimant's mental/psychological limitations, the court also instructs that on remand, the ALJ should provide substantial evidentiary support for his conclusions as to the impact of claimant's postural limitations on the occupational base open to him.

6The First Circuit has stated that "[d]espite what might be suggested by use of the word 'framework,' whenever an ALJ fails to take vocational testimony, he must be deemed in reality to have relied exclusively on the grid to show the existence of jobs claimant could perform." Ortiz v. Secretary of Health and Human Servs., 890 F.2d 520, 524 n.4 (1st Cir. 1989)(internal quotation marks and brackets omitted).

13

of pain and he improperly used the medical-vocational guidelines without having a vocational expert testify. The court will address the latter argument first.

Claimant argues that the ALJ erred in using the grid without vocational expert testimony where the claimant had shown material nonexertional impairments. Specifically, claimant notes that Dr. Martinez determined that his ability to use judgment, interact with supervisors, deal with work stresses, and function independently was only fair,[7] which was defined to mean that his "[a]bility to function in [these] area[s] is seriously limited, but not precluded." (R. at 244.) Claimant argues that serious impairment of four occupational adjustment abilities must further limit the range of work that would otherwise be available to him given his exertional limitations alone.

The purpose of the grid is to "'streamline[]'" the process by which the Commissioner may satisfy his burden of proving, at step five of the sequential analysis, that jobs exist in the national economy that the claimant can perform. See Ortiz, 890

---

[7]Claimant states in his brief that Dr. Martinez found his ability to function independently to be fair to poor. It is difficult to determine from Dr. Martinez' handwritten assessment whether he intended to denote a mid-range finding on this factor. However, as claimant stipulated at page 17 of the parties' Joint Statement of Material Facts that Dr. Martinez rated his ability to function independently as fair, the court will take that to be Dr. Martinez' conclusion.

F.2d at 524.  The grid allows the Commissioner to meet that burden without hearing testimony by a vocational expert.  See id. The grid is based on the claimant's exertional capacity, see id., and certain vocational variables, see 20 C.F.R. Pt. 404, Subpt. P. App. 2, § 200.00(a).  It "is meant to reflect the potential occupational base remaining to a claimant in light of his strength limitations."  Ortiz, 890 F.2d at 524.  Thus, "[w]here a claimant has nonexertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform."  Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991)(emphasis added).

The First Circuit has held that an ALJ may still rely exclusively on the grid to establish the existence of occupations the claimant can engage in if the claimant's nonexertional limitations do not impose a significant or more than marginal limitation on the range of work the claimant otherwise has the exertional capacity to perform.  See Ortiz, 890 F.2d at 524. However, "[i]f the occupational base is significantly limited by a nonexertional impairment, the [Commissioner] may not rely on the Grid to carry the burden of proving that there are other jobs a claimant can do.  Usually, testimony of a vocational expert is required."  Heggarty, 947 F.2d at 996 (citation omitted).

15

The ALJ considered Dr. Martinez' findings and concluded that "claimant's mild learning disorder does not reduce the unskilled vocational base outlined in the regulations." (R. at 35.) The ALJ reasoned that because unskilled work requires little or no judgment, claimant's "learning disorder"[8] would not prevent him from engaging in unskilled occupations. The ALJ's reasoning is sound as far as it goes. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The ALJ therefore could have correctly concluded that claimant's limited ability to use judgment would not significantly restrict the unskilled occupational base available to him.

Dr. Martinez also noted, however, other serious limitations in claimant's ability to make occupational adjustments,

---

[8]By explicitly referring solely to claimant's learning disorder, the ALJ seems, on the one hand, to have considered only claimant's difficulties in reading, spelling and arithmetic. The ALJ's reasoning regarding the nature of unskilled work, however, appears to address Dr. Martinez' opinion that claimant had only a fair ability to use judgment, a limitation Dr. Martinez may or may not have considered connected to claimant's learning disability. (See R. at 245, where the only medical/clinical finding noted by Dr. Martinez as supporting his assessment in the occupational adjustment category was that "[claimant's] learning problem will most likely interfer[e] with work performance.") It appears, then, that the ALJ considered the other mental/psychological impairments noted by Dr. Martinez in addition to difficulties with reading and writing.

16

specifically, in the areas of interacting with supervisors, dealing with work stresses, and functioning independently. The ALJ did not directly address any of these limitations. Defendant now argues that like the capacity to use judgment, the abilities to deal with work stresses and function independently are not required to perform unskilled work. These claims, however, are unsubstantiated. If the ALJ implicitly made these assumptions in determining that claimant's remaining occupational base was not significantly diminished by these limitations, he erred in doing so. See Sanders v. Sullivan, 983 F.2d 822, 823-4 (8th Cir. 1992)(finding that the ALJ's determination that "work-related stresses would be minimized in an unskilled entry-level job . . . invaded the province of the vocational expert"); Walker v. Apfel, 1998 WL 928672 at *4 (D. Kan. Sept. 18, 1998)(finding that a "statement by the ALJ that unskilled work is low stress work is questionable and has no basis in fact").

There may well be jobs in the national economy that claimant can perform despite his exertional and nonexertional limitations. It may even be the case that claimant's limitations in making occupational adjustments, as well as his postural limitations, do not significantly restrict the occupational base reflected in the appropriate grid. These determinations, however, must be supported by substantial evidence. In the instant case, they are

17

not.  Therefore, this case must be remanded so that the Commissioner may introduce evidence to meet, if he can, his burden of proving that there are jobs in the national economy that claimant can perform.  As noted previously, such evidence is usually introduced through the testimony of a vocational expert.

Claimant also challenges the ALJ's evaluation of his complaints of disabling pain.  Claimant concedes that the ALJ recognized the proper criteria for evaluating subjective complaints of pain.  He argues, however, that the ALJ made only a "limited effort to apply the criteria," and should have conducted a more thorough inquiry into his complaints of disabling pain. (Claimant's Br. at 16.)

This court has noted:

> When a claimant complains that pain or other subjective symptoms are a significant factor limiting his or her ability to work, and those complaints are not fully supported by medical evidence contained in the record, the ALJ must consider additional evidence, such as the claimant's prior work record; daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, past or present; treatment, other than medication, received for relief of pain or other symptoms, past or present; any measures used, past or present, to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain.

Mandziej v. Chater, 944 F. Supp. 121, 133 (D.N.H. 1996).  The ALJ found claimant's complaints of disabling pain, viewed in the

18

context of the foregoing factors, "not entirely credible." (R. at 35.) Specifically, the ALJ found that claimant's daily activities, which included performing housekeeping tasks at a reduced pace and visiting his mother, were not consistent with complaints of totally disabling pain. The ALJ also noted that claimant did not require the use of narcotics to control his pain and had not needed continuing medical care for over a year. He concluded that claimant did not suffer pain to the degree that it would inhibit his ability to engage in a less than full range of light work.

Claimant challenges each of the ALJ's findings and argues that examination of other factors lends credence to his allegations of disabling pain. Substantial evidence existed to support the ALJ's determinations regarding ongoing treatment and use of medications. Claimant testified that he had not sought medical treatment in approximately a year, (R. at 77), and that his consistent choice of pain medication was Aleve, (R. at 71), an over-the-counter drug. Claimant did testify that he ceased seeking medical help because he thought he had reached an endpoint in his condition, (R. at 77), and that other pain medications prescribed for him had not worked effectively and/or had caused troublesome side effects, (R. at 71). The ALJ could have discounted those explanations, however, where the record

19

contains no evidence that claimant followed up on Dr. Jacobs' recommendation that he undergo a rheumatologic evaluation and where claimant does not appear to have complained to Dr. Detwiler or Dr. Jacobs, the prescribing physicians, of ineffectiveness or side effects associated with the pain medications.[9]

Claimant also argues that the ALJ erred by implicitly finding that even though claimant could perform household chores only "at a reduced pace," (R. at 35), he could engage in "sustained work activities" at the light exertional level "in an ordinary work setting on a regular and continuing basis," which generally means eight hours a day, five days a week, SSR 96-8p, 1996 WL 374184 at *2. "A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a [light work] job." Polidoro v. Apfel, 1999 WL 203350 at *8 (S.D.N.Y. April 12, 1999).

---

9The latter observation is stated somewhat hesitantly because Dr. Detwiler's office notes in the Record are handwritten and difficult to read. Dr. Detwiler did note, in 1992, that claimant still complained of foot pain after a full course of a drug presumably prescribed for pain, but there is no indication whether the drug provided temporary relief. No mention of side effects was noted. Claimant did tell Dr. Martinez, however, that he did not take prescription pain killers because they "impair[ed] his cognitive functioning." (R. at 241.)

20

The ALJ made no findings as to what impact claimant's need to pace himself when performing household chores, which the ALJ apparently found to be credible, would have on his ability to meet the durational requirements of light work. On remand, the ALJ should consider this issue and support his conclusion with substantial evidence. The court will not address claimant's arguments regarding other credibility factors allegedly given short shrift by the ALJ, as the ALJ made no specific findings that the court can review and the weighing of evidence is the Commissioner's province. See Irlanda Ortiz, 955 F.2d at 769 ([T]he resolution of conflicts in the evidence is for the [Commissioner] not the courts.").

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 7) is granted and the Commissioner's motion for order affirming the decision of the Commissioner (document no. 8) is denied. The case is remanded for further proceedings consistent with this order.

**SO ORDERED.**

                                       _____
                                       Steven J. McAuliffe
                                       United States District Judge

September 30, 1999

cc:   Raymond J. Kelly, Esq.
       David L. Broderick, Esq.